UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jack T. Speake

   v.                                    Civil No. 17-cv-20-JD
                                         Opinion No. 2017 DNH 076
The Bank of New York Mellon
f/k/a Bank of New York, as
Trustee of the CWALT, Inc.
Alternative Loan Trust 2006-6CB,
Mortgage Pass-Through Certificates
Series 2006-6CB

O R D E R

Jack T. Speake, proceeding pro se, filed a petition in state court to enjoin The Bank of New York Mellon, as trustee, of the CWALT, Inc. Alternative Loan Trust 2006-6CB, Mortgage Pass-Through Certificates Series 2006-6CB ("Bank") from foreclosing on his property and seeking damages. The state court denied Speake's request for an ex parte temporary restraining order. The Bank removed the case to this court and moved to dismiss. Speak was granted an extension of time to file a response to the motion to dismiss but failed to do so.

## Standard of Review

In considering a motion under Rule 12(b)(6), the court takes the factual allegations in the complaint as true and draws reasonable inferences from those facts in favor of the

plaintiff's claims.  Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016).  Based on the properly pleaded facts, the court determines whether the plaintiff has stated "a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the facts as pleaded, taken in the context of the complaint and in light of "judicial experience and common sense," allow the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

In addition to the properly pleaded allegations in the complaint, the court may consider documents that the plaintiff filed with the complaint.  See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  In this case, Speake filed the mortgage and the note, along with other documents, with his complaint.  Those documents are considered for purposes of the Bank's motion to dismiss.

## Background[1]

In the petition, Speake alleges that he and his wife took title to property at 33 Route 4A, Wilmot, New Hampshire, in April of 2006.  Speake alleges that they obtained a loan of

---

[1] Much of the petition consists of legal conclusions which cannot be considered for purposes of determining whether a plaintiff has stated a claim for relief.  See Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013).

2

$215,300.00, which was secured by the property and that "[o]n information and belief [he] allegedly executed a Promissory Note (the 'Note') and Mortgage on the Property securing the Note (the 'Mortgage') with [Countrywide Home Loan, Inc. ('CWHL')]." He also states: "The Note and Mortgage/Notice to Cancel Rescission and HUD-1 Settlement Agreement were ever [sic] returned to the Speake's after CWHL Settlement agent left the Speake's kitchen."

In the Speakes' mortgage, MERS was the nominee for the lender, Countrywide Home Loans, Inc., and was named as the mortgagee. MERS assigned the mortgage to BAC Home Loans Servicing, LP on September 15, 2010, and the assignment was recorded on September 16, 2010, in the Merrimack County Registry of Deeds. Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP assigned the mortgage to the Bank on June 11, 2011, and the assignment was recorded on June 14, 2011. A second assignment from Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP, dated December 22, 2011, was recorded on December 23, 2011.

Speake contends that the mortgage that is recorded in the registry was fraudulently notarized by a justice of the peace and that any documents the Bank might produce would be forgeries. He alleges that CWHL has never provided evidence of a note or mortgage. He further alleges that he mailed a "Notice

to Rescind" on May 20, 2015, and that the notice is recorded in the registry of deeds.

Beginning in 2008, the Speakes attempted to have their loan modified, without success. Speake alleges that they have been fighting to stop foreclosures since 2010.

Apparently, there was a foreclosure scheduled on the property for March 14, 2016, which was cancelled. Thereafter, Speake had communications with Select Portfolio Services, Inc. Speake alleges misconduct by Select Portfolio Services, real estate websites, and the Bank, pertaining to representations about a foreclosure that had not happened.

A foreclosure of the property was scheduled for November 8, 2016. Speake states that he did not receive notice of the planned foreclosure. On November 8, 2016, Speake filed the petition in state court, seeking, among other things, an ex parte temporary restraining order to stop the foreclosure sale. The state court denied the request for a restraining order. The Bank removed the case to this court.

## Discussion

Speake alleges in Counts I through III that the Bank lacks the authority to foreclose. Speake alleges in Counts IV through VII that the Bank breached the duty of good faith and fair dealing, that he did not default, that there is no mortgage

4

contract to enforce, and that the Bank lacks standing. Count VIII is titled "Rescission". The Bank moves to dismiss all of the claims.

A. Authority to Foreclose

Speake contends that the Bank lacks the authority to foreclose on the property because it does not have the "Original Wet-Ink Note," because of gaps in the chain of assignment of the mortgage, and because the Bank does not possess both the note and the mortgage. The Bank moves to dismiss on the grounds that the claims are not supported by facts, Speake does not state a claim, and that Speake has not alleged any harm.

When the mortgage shows an agency relationship between the lender and the mortgagee, with the ability to assign those interests, and the subsequent assignments are valid, an assignee of the mortgagee, as the agent of the noteholder, has the authority to exercise the power of sale under the mortgage without holding the note. Bergeron v. N.Y. Comm'ty Bank, 168 N.H. 63, 71 (2015). When a mortgage states that MERS is "acting solely as nomine for Lender and Lender's successors and assigns," it creates an agency relationship between MERS and the lender. Id. at 70. Then, if the mortgage so provides, MERS has the right to exercise any and all of the rights of the lender, including the authority to foreclose and sell the property. Id.

That is the case here. Speake's mortgage identifies MERS as the nominee for Countrywide Home Loans, Inc. in the same language that was used in the mortgage at issue in Bergeron. Speake's mortgage also grants MERS, as nominee for Countrywide, the right to exercise all of the lender's interests, including the right to foreclose and sell the property, as was the case in Bergeron. Therefore, as long as the assignment of the mortgage to the Bank is valid, the Bank has the authority to foreclose and sell the property.

Speake does not explain what defect he finds in the chain of assignments between MERS and the Bank.[2] To the extent he relies on the second assignment from BAC to the Bank in December of 2011, he does not show a defect. Instead, the second

---

[2] Speake attached to the complaint a copy of an "Expert Summary Report" prepared by Brown & Associates of Beverly Farms, Massachusetts, that is dated June 29, 2015. Doc. 1-1, at 58. The report states that "Brown & Associates LLC was retained to conduct a review of the securitization documents publicly available for [Speake's property's address] and subsequent documentation for purposes of making the following determinations: (1) identify the terms of the compliance with the Trust; and (2) review whether the terms of compliance have been met or not met after a consideration of review of additional documentation made available for purposes of this review." Id. at 59. The Brown report provides an opinion that the assignments of the mortgage "did not occur in accordance with the terms of Prospectus and Pooling and Servicing Agreement." That opinion, however, does not affect the validity of the mortgage assignments with respect to the Bank's right to foreclose on Speake's mortgage. See, e.g., Proal v. JP Morgan Chase & Co., 202 F. Supp. 3d 209, 214 (D. Mass. 2016); Dove v. Bank of N.Y. Mellon, 2016 WL 799117, at *4 (D.N.H. Feb. 29, 2016).

assignment merely confirms the first assignment, which was made in September of 2010. Dyer v. Wells Fargo, N.A., 841 F.3d 550, 554 (1st Cir. 2016). Because Speake has not alleged a defect in the chain of assignment to the Bank, the Bank has authority to foreclose and sell the property.

B.  Good Faith and Fair Dealing

Speake alleges that the Bank breached the duty of good faith and fair dealing by denying him loan modifications because the Bank or its servicing agents lost the documents he provided. New Hampshire recognizes an implied duty of good faith and fair dealing in contractual relationships. Birch Broad, Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010). It is well-settled, however, that mortgagees are not required under the duty of good faith and fair dealing to consider a request or an application for a loan modification. Mader v. Wells Fargo Bank, N.A., 2017 WL 177619, at *4 (D.N.H. Jan. 17, 2017) (citing cases). Therefore, Speake has not stated a claim for breach of the duty of good faith and fair dealing.

C.  Default

Speake states that "[p]ursuant to the provisions of the Pooling Servicing Agreement and other related agreements by the parties to said Series 2006-6CB Trust, other parties including the servicers and/or insurers have assumed or guaranteed or

7

insured the payment obligations of the Speake's [sic] under their Promissory Note thereby curing and eliminating any default under the promissory note according to its own terms." Doc. no. 1-1, at 18, Petition, ¶ 93. In support, Speake alleges only that the "internal accounting and tax records of said Trust" will show that his mortgage loan has been paid.

The theory that a mortgage loan was paid pursuant to agreements between the Trust and other entities has been raised and rejected in other cases. Payments made under Pooling Service Agreements are "pursuant to separate contractual obligations between the servicers and the trusts" and, for that reason, are not made on behalf of the mortgagor. Ouch v. Fed. Nat'l Mortg. Ass'n, 2013 WL 139765, at *3 (D. Mass. 2013); see also In re Rivera, 2016 WL 5868693, at *11 (B.A.P. 9th Cir. Oct. 6, 2016) (explaining operation of Pooling Servicing Agreements); Pulliam v. PennyMac Mortg. Inv. Tr. Holding I LLC, 2014 WL 3784238, at *4 (D. Me. July 31, 2014) (lack of servicing agreement not material when allegations do not support claim).

Therefore, Speake does not state a claim based on a theory that his mortgage note is not in default.

D. Mortgage Contract

Speake contends that there is no mortgage contract because Countrywide did not provide funds under the mortgage loan and is

8

not the identified lender. As a result, Speake asserts, Countrywide lacked authority to enforce or assign the mortgage. The language of the mortgage itself contradicts Speake's allegations.[3]

Countrywide is identified as the "Lender" in the mortgage agreement and references the note through which Speake borrowed $215,300.00. Speake alleged in the complaint that he and his wife obtained a loan of $215,300.00 from Countrywide in 2006. Therefore, Speake does not allege a viable claim that there is no mortgage contract.

E. No Standing

In support of the claim titled "No Standing," Speake alleges that his property has been taken "by false pretenses and false advertising regarding pending listings of Petitioners property without it ever having been foreclosed on." Doc. 1-1, at 20, Petition, ¶ 101. He cites advertisements on real estate websites, Trulia and Zillow, and states that he was promised thousands of dollars to leave the property or face eviction. He asserts that the advertising was "false swearing, slandering off the Petitioners title and defamation of character." Id. ¶ 102.

---

[3] To the extent Speake intended to rely on his assertion that the mortgage recorded in the registry of deeds was fraudulently notarized, that assertion does not support his claim. Speake does not deny that he signed the mortgage.

To the extent Speake intended to challenge the Bank's standing to foreclose and sell the property, that claim was addressed in Part A, above. The remainder of Count VII does not address standing but instead seems to raise slander of title and defamation.

A claim of slander of title must be supported with facts showing that the defendant maliciously published false statements that disparaged his right to the property and special damages that resulted. See Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423, 434 (D. Mass. 2011); Sprague Corp. v. Sprague, 855 F. Supp. 423, 437 (D. Me. 1994). Speake alleges that Trulia and Zillow have shown on their websites that his property was foreclosed and sold for $31,000 and that a bank owns the property. Speake provides no facts to show that the Bank had any involvement in providing the information shown on the cited websites, that the information disparages his right to the property, or that he suffered any special damages as a result of the information on the websites. Therefore, Speake provides no factual allegations to support a claim of slander of title.

Under New Hampshire law, "to establish defamation, there must be evidence that a defendant published a false and defamatory statement of fact about the plaintiff to a third party." Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 507 (1st Cir. 2002) (internal quotation marks omitted). Speake

10

alleges that Trulia and Zillow, not the Bank, published false information about his property. His allegations do not support a claim for defamation against the Bank.

F. Rescission

Speake contends that he is entitled to have the mortgage loan rescinded, under the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"), because he sent a notice of rescission by certified mail on May 15, 2015, which was recorded on March 11, 2016.[4] The Bank moves to dismiss the claim on the ground that it is time barred.

Under TILA, a borrower in a consumer credit transaction that provides a security interest in the principal dwelling of the borrower "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms" and other information. 15 U.S.C. § 1635(a). Regardless of when or if the required information, forms, and disclosures are provided, a borrower's "right of rescission shall expire three years after the date of

---

[4] RESPA does not appear to apply to this claim. To the extent Speake intended to raise an issue about a QWR under RESPA, he has not alleged facts to support the claim. 12 U.S.C. §§ 2605(e)(1) & 2605(f). See, e.g., Ramos-Gonzalez v. First Bank of P.R., 2015 WL 6394409, at *2-*3 (D.P.R. Oct. 22, 2015) (explaining claims under RESPA).

11

consummation of the transaction or upon the sale of the property, whichever occurs first" unless an agency proceeding to enforce TILA is begun in the meantime that involves the borrower's right to rescind. § 1635(f).

In this case, Speake and his wife obtained the mortgage loan in March of 2006. Speake did not send a notice of rescission until May of 2015. Because Speake's right to rescind expired long before May of 2015, the claim is time barred.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 2) is granted. All of the claims in the plaintiff's petition are dismissed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*[signature]*
Joseph DiClerico, Jr.
United States District Judge

April 17, 2017

cc: Jack T. Speake, pro se
    Michael P. Trainor, Esq.
    Mary Ellen Manganelli, Esq.